No. 23-13577

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

TIM RANDOLPH DANIELS,

*Plaintiff-Appellant*,

v.

STATE OF FLORIDA, FISH AND WILDLIFE
CONSERVATION COMMISSION and ERIC SUTTON,
EXECUTIVE DIRECTOR OF THE STATE OF FLORIDA,
FISH AND WILDLIFE CONSERVATION COMMISSION

*Defendants-Appellees*.

Appeal from the United States District Court
for the Southern District of Florida

No. 4:21-cv-10009-JEM/Becerra

## APPELLANT'S OPENING BRIEF

**KENNETH G. OERTEL**
Oertel, Fernandez, Bryant & Atkinson, P.A.
2060 Delta Way
Tallahassee, FL 32303
Telephone: (850) 544-5301
E-mail: koertel@ohfc.com
*Attorney for Plaintiff-Appellant*
Tim Randolph Daniels

**Tim Randolph Daniels v. State of Florida, Fish and Wildlife Conservation Commission**

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

In accordance with 11th Cir. R. 26-1(a)(1), the above referenced Appellant hereby states that the following is a list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, corporations, and other legal entities that have an interest in the outcome of this case, including subsidiaries, conglomerates, affiliates and parent corporations, any publicly held company that owns 10 percent or more of a party's stock, and other identifiable entitles related to a party:

1. Becerra, Magistrate Judge Jacqueline

2. Daniels, Tim Randolph

3. Eason, Thomas

4. Florida Attorney General's Office

5. Florida Fish and Wildlife Conservation Commission

6. Florida Keys Commercial Fishermen's Association, LLC

7. Gregg, Robert Edward

8. Horan Law

9. Horan, David Paul

10. Junge, Barbara Ann

11. Martinez, Honorable Jose E. – United States Judge, Southern District of Florida

12. Oertel, Fernandez, Bryant & Atkinson, P.A.

13. Oertel, Kenneth G.

14. Palm Beach County Attorney's Office

15. Parnell, Rhonda E.

16. Sutton, Eric

17. Weaver, Shane

## Statement Regarding Oral Argument

As the issue before this Court is an issue of first impression, Appellant feels that a full explanation of its position via oral argument would benefit the Court and allow the parties to more fully clarify the boundaries of this now-muddied area of law.

# Table Of Contents

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ..............................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT.................................................i

TABLE OF CONTENTS ......................................................................................... ii

TABLE OF CITATIONS.........................................................................................iv

STATEMENT OF JURISDICTION ...................................................................... vii

STATEMENT OF THE ISSUES ..............................................................................1

STATEMENT OF THE CASE AND THE FACTS ...................................................3

PROCEDURAL AND FACTUAL HISTORY OF THE DISTRICT COURT
LITIGATION ...........................................................................................................5

STANDARD OF REVIEW ......................................................................................5

SUMMARY OF THE ARGUMENT ........................................................................5

ARGUMENT ............................................................................................................7

    I.      APPELLANT HAS STANDING TO CHALLENGE THE
             POMPANO ENDORSEMENT RULES ...............................................7

    II.     THE FLORIDA POMPANO REGULATIONS ARE PREEMPTED
             BY THE MAGNUSON ACT WHEN ENFORCED IN FEDERAL
             WATERS ...........................................................................................11

             A.     THE FEDERAL MAGNUSON-STEVENS FISHERY
                   CONSERVATION AND MANAGEMENT ACT ....................11

             B.     FLORIDA'S POMPANO REGULATION SCHEME ..............13

             C.     FEDERAL PREEMPTION GENERALLY ..............................17

             D.     HISTORY OF THE MAGNUSON ACT ..................................18

             E.     PRIOR INTERPRETATION BY FEDERAL COURTS ..........23

      F.      FEDERAL REGULATION PREEMPTION ............................25

III.    THE FLORIDA POMPANO REGULATIONS VIOLATE THE
      EQUAL PROTECTION CLAUSE OF THE UNITED STATES
      CONSTITUTION................................................................................26

CONCLUSION ......................................................................................30

CERTIFICATE OF COMPLIANCE ......................................................31

**Table of Citations**

**Cases**                                                    **Page(s)**

*219 South Atlantic Blvd. Inc. v. City of Ft. Lauderdale*, 239 F. Supp. 2d 1265 (S.D. Fla. 2002) .................................................................................27

*31 Foster Children v. Bush*, 329 F.3d 1255 (11th Cir. 2003) ....................................10

*Anderson Seafoods, Inc. v. Graham*, 529 F. Supp. 512 (N.D. Fla. 1982) ...............23

*Bateman v. Gardner*, 716 F. Supp. 595 (S.D. Fla. 1989) (11th Cir. 1990) ........24, 29

*Bochese v. Town of Ponce Inlet*, 405 F.3d 964 (11th Cir. 2005) ...............................8

*Chae v. SLM Corp.*, 593 F.3d 936 (9th Cir. 2010) ....................................................17

*City of Charleston v. A Fisherman's Best, Inc.*, 310 F.3d 155 (4th Cir. 2002) ......................................................................................................6, 16, 17

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) .............................27

*Daniels v. Sutton*, No. 4:21-cv-10009-JEM/Becerra, 2022 WL 686832 (S.D. Fla. 2022) .........................................................................................9

*Deen v. Egleston*, 597 F.3d 1223 (11th Cir. 2010) ....................................................27

*GRACE, Inc. v. City of Miami*, ___ F. Supp. 3d ____, 2023 WL 4942064 (S.D. Fla. 2023) .......................................................................................28

*Haves v. City of Miami*, 52 F.3d 918 (11th Cir. 1995) ....................................... 27-28

*Honig v. Doe*, 484 U.S. 305 (1988) ..........................................................................10

*Lloyd v. School Bd. of Palm Beach Cty.*, 570 F. Supp. 3d 1165 (11th Cir. 2021) ....28

*Lujan v. Defs of Wildlife*, 504 U.S. 555 (1992) ........................................................8

*Mack v. USAA Casualty Ins. Co.*, 994 F.3d 1353 (11th Cir. 2021) ...........................8

*Malone v. White Motor Corp.*, 435 U.S. 497 (1978) ...............................................18

*Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342 (11th Cir. 1999) ...........8

*Nat'l Audubon Society, Inc. v. Davis*, 312 F.3d 416 (9th Cir. 2002) .......................17

*Otto v. City of Boca Raton, 981 F.3d 854 (11th Cir. 2020)*............................... 28-29

*People v. Weeren*, 607 P.2d 1279 (Cal. 1980) ..........................................................23

*Ramji v. Hosp. Housekeeping Sys., LLC*, 992 F.3d 1233 (11th Cir. 2021) ...............5

*Republic of Sudan v. Harrison*, 587 U.S. ____, 139 S. Ct. 1048 (2019) ................18

*Restigouche, Inc. v. Town of Jupiter*, 59 F.3d 1208 (11th Cir. 1995) ......................27

*Ross v. Blake, 578 U.S. 1850 (2016)* .......................................................................19

*Schweiker v. Wilson*, 540 U.S. 221 (1981) .............................................................27

*Shotz v. Cates*, 256 F.3d 1077 (11th Cir. 2001) .......................................................8

*Signor v. Safeco Inc. Co. of Ill.*, 72 F.4th 1223 (11th Cir. 2023) ............................1

*Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238 (1984) ............................................18

*Solis v. Miles*, 524 F. Supp. 1069 (S.D. Tex. 1981) ...............................................29

*Se. Fisheries Ass'n v. Chiles*, 979 F.2d 1504 (11th Cir. 1992) ....................6, 17, 24

*Se. Fisheries Ass'n v. Martinez*, 772 F. Supp. 1263 (S.D. Fla. 1991) .....................24

*State v. Lauriat*, 561 A.2d 496 (Me. 1989) ............................................................24

*U.S. v. Pate*, 84 F.4th 1196 (11th Cir. 2023) ........................................................23

*United Cook Inlet Drift Ass'n v. Nat. Marine Fisheries Serv.*, 837 F.3d 1055 (9th Cir. 2016) ......................................................................................................7, 13

*Vietnamese Fishermen Ass'n of Am. V. Cal. Dep't of Fish and Game*, 816 F. Supp. 1468 (N.D. Cal. 1993) ......................................................................24, 25

**Statutes**

16 U.S.C. § 1801 ..................................................................................................4, 12

16 U.S.C. § 1802 ..................................................................................................6, 20

16 U.S.C. § 1811 ..............................................................................................1, 6, 12

16 U.S.C. § 1812 .......................................................................................................4

16 U.S.C. §1852 ....................................................................................................7, 13

16 U.S.C. § 1856 ........................................................... 4, 7, 18, 19, 22, 23, 25

16 U.S.C. § 1861 .................................................................................................... vii

28 U.S.C. § 1291 .................................................................................................... vii

42 U.S.C. § 1983 ..................................................................................2

42 U.S.C. § 1988 ................................................................................ vii

§ 379.101, Fla. Stat. ...........................................................................13

**Regulations**

50 C.F.R. § 622.9 .............................................................7, 11, 15, 25

85 C.F.R. 28471 .................................................................................12

Fla. Admin. Code R. 68B-35.001 ................................................13, 28

Fla. Admin. Code R. 68B-35.002 ............................................9, 13, 29

Fla. Admin. Code R. 68B-35.0035 ....................................................14

Fla. Admin. Code R. 68B-35.004 ..............................................3, 9, 14

Fla. Admin. Code R. 68B-35.005 ............................................9, 14, 15

**Rules**

Fed. R. Civ. Pro. 56 .............................................................................1

**Other Authorities**

Article IV, § 16, Florida Constitution ................................................22

Article X, § 16, Florida Constitution ..................................................3

Article VI, Clause 2, United States Constitution ...............................17

11th Cir. R. 26-1(a)(1).....................................................................C-1

## STATEMENT OF JURISDICTION

The trial court entered its Order on Motion for Summary Judgement on September 26, 2023. A Final Judgment was issued on October 2, 2023, and a timely Notice of Appeal was filed on October 26, 2023. The case below was properly before the District Court because the Magnuson Act provides that exclusive jurisdiction lies in the Federal Courts. 16 U.S.C. § 1861(d). This Court has jurisdiction over this cause pursuant to 28 U.S.C. § 1291 and jurisdiction to award attorney fees and costs on appeal pursuant to 42 U.S.C. § 1988.

# STATEMENT OF THE ISSUES

The parties agree that there were no genuine issues of material fact in the proceedings below, and therefore, it was proper for the District Court to rule on the Cross-Motions for Summary Judgement as a matter of law. *Signor v. Safeco Ins. Co. of Ill.*, 72 F. 4th 1223, 1227 (11th Cir. 2023) ("Summary judgment is appropriate when a movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.") (internal quotation marks omitted) (citing Fed. R. Civ. P. 56(a)).

The primary legal issue before the District Court was the scope of Florida's power to regulate fishing in the Exclusive Economic Zone. Regulation of fisheries in these waters lies in the exclusive purview of the federal government. 16 U.S.C. § 1811(a) ("Except as provided in section 1812 of this title, the United States claims, and will exercise in the manner provided for in this chapter, sovereign rights and *exclusive fishery management authority* over *all fish*, and all Continental Shelf fishery resources, within the exclusive economic zone.") (emphasis added). The United States Exclusive Economic Zone is the vast area of international waters beyond the outer limits of the territorial waters of the states extending to 200 nautical miles seaward.

The central issue in this case is whether Florida's extraterritorial enforcement of Florida fishing regulations is either preempted by the Fishery Conservation and

Management Act of 1976, as amended (Magnuson Act), is unconstitutional, or both. In the District Court, Daniels claimed that Florida's gear restrictions and Pompano Regulations (1) were preempted by the Magnuson Act and therefore violative of the Supremacy Clause, (2) violated the Commerce Clause, (3) violated the Equal Protection Clause, and (4) violated the Privileges and Immunities clause. App'x at 166-169, 178. After Florida's state officials physically arrested Daniels, he timely brought a declaratory action challenging the state's practices under 42 U.S.C. § 1983 and sought a permanent injunction against any further illegal enforcement.

The District Court found that Daniels lacked standing. For the reasons described below, it is clear that Daniels properly alleged standing and is due relief under 42 U.S.C. § 1983.

The specific issues that must be resolved by this Court are:

1.      Whether the District Court Erred in Determining that Daniels lacked standing;

2.      Whether the State of Florida acted in excess of its police powers and contrary to the laws of the United States by regulating fishing and fisheries in federal waters despite clear federal reservation of such authority under the Magnuson Act; and

3.      Whether the District Court's denial of declaratory and injunctive relief with regard to Florida's violation of Daniels's Equal Protection rights was proper.

## STATEMENT OF THE CASE AND THE FACTS

This is an appeal of a Final Judgment of U.S. District Court Judge Jose Martinez of the Southern District of Florida, entered on October 2, 2023. App'x at 199. The Judgment memorialized an Order on a Motion for Summary Judgment entered on September 27, 2023. App'x at 186-198. That Order *denied* Daniels' Motion for Summary Judgment and *granted* the Appellee's Motion for Summary Judgment. App'x at 186, 198-99. The facts pertinent to this appeal are not in dispute.

The Appellant, Tim Randolph Daniels, is a commercial fisherman who resides in Florida. Amended Complaint at 1. On April 14, 2020, Daniels was arrested by officers of the Florida Fish and Wildlife Conservation Commission ("FWC") on the charge of violating Fla. Admin Code R. 68B-35.004(4), which provides that the "harvest or attempted harvest of any pompano within or without state waters by or with the use of any gear other than a beach or haul seine, a cast net, or hook and line gear is prohibited." Incident Summary Report at 2, 3, & 5. At the time of the arrest, Mr. Daniels was using a gill net to target pompano in the Exclusive Economic Zone ("EEZ") outside the territorial waters of the State of Florida. *Id.* at 3 & 5. In 1992, Florida adopted an amendment prohibiting the use of gill nets in state waters. Art. X, § 16(a)(1), Fla. Const. ("No gill nets or other entangling nets shall be used in any Florida waters…"). At the time of his arrest, Daniels and his crew—aboard the Florida-registered F/V Lady—were clearing and repairing the gill net in the EEZ

approximately 17 miles north of Big Pine Key. *Id*. at 4 & 6. Daniels has been fishing in Federal waters for at least 40 years. Deposition of Plaintiff at 11-12.

An essential finding of Judge Martinez's order can be summed up as follows: because the Magnuson Act, in s. 1856(a)(3)A(i) expressly provides a state can regulate a *fishing vessel* within the EEZ, when the vessel is registered in the state and there is no adopted management plan for a particular species, the State of Florida was authorized to arrest Mr. Daniels for *using prohibited gear* within the EEZ.

This portion of the Order highlights the central issue in this appeal. In 1976 Congress passed the Fishery Conservation and Management Act, 16 U.S.C. § 1801, *et. seq*., in an effort to promote and standardize America's domestic fishing market. 16 U.S.C. §§ 1801(a)(3), (a)(13), (b)(3) & (b)(6). The Act grants the federal government "exclusive fishery management authority" over all federal fishery resources, 16 U.S.C. § 1812(1), subject to two exceptions: First, where the federal government explicitly delegates resource management responsibilities to a state— under 16 U.S.C. § 1856(a)(3)(B)—and second, where the federal government has not enacted a Fishery Management Plan (FMP) based on a finding that a certain fishery does not require management and conservation, under 16 U.S.C. § 1856(a)(3)(A) a state may regulate fishing vessels registered under its laws.

While there are a number of cases which provide holdings that adjudicate issues at the margins of the instant dispute, the fundamental issue in this case—the

extent to which states may regulate fishing and the use of fishing gear on state-registered vessels in the EEZ in the absence of an (FMP)—has not been ruled upon.

## PROCEDURAL AND FACTUAL HISTORY OF THE DISTRICT COURT LITIGATION

This dispute began with the April 14, 2020, arrest of Daniels for using a gill net in the EEZ. The FWC moved to dismiss Daniels' Amended Complaint on the grounds that Daniels failed to establish standing, that Daniels failed to sufficiently plead subject matter jurisdiction, and that the suit was barred by the Eleventh Amendment. District Judge Martinez denied that motion. Thereafter, the parties filed cross-motions for summary judgement. The grant of FWC's Motion for Summary Judgement and the denial of Daniels' Motion for Summary Judgement are the issue now pending before this court.

## STANDARD OF REVIEW

A District Court's decision on cross-motions for summary judgment should be reviewed *de novo*. *Ramji v. Hosp. Housekeeping Sys., LLC*, 992 F. 3d 1233, 1241 (11th Cir. 2021).

## SUMMARY OF THE ARGUMENT

Appellant, by virtue of his arrest, had standing and timely asserted his claim. Further, a proper textual analysis demonstrates that Florida's enforcement of its pompano fishing regulations within the EEZ is contrary to the clear language in the Magnuson Act which gives the United States "sovereign rights and *exclusive* fishery

management authority over *all fish* … within the exclusive economic zone," 16 U.S.C. § 1811. The decision below frustrates the intent of Congress in managing EEZ fisheries in a manner that maximizes the viability of the domestic commercial fishing market where the relevant Marine Fisheries Council (MFC) has determined that a fishery is *not* in need of conservation or management. After all, it is clear from the Magnuson scheme that Congress "did not intend the Balkanization of our coastlines." *City of Charleston v. A Fisherman's Best*, 310 F. 3d 155 177 (4th Cir. 2002).

This court, relating to the applicability of state regulation of state-registered vessels in the EEZ where no FMP has been promulgated, read the term "regulate a fishing vessel" to limit the scope of the term to only the vessel itself and not the catch or equipment used. *Se. Fisheries Ass'n, Inc. v. Chiles*, 979 F. 2d 1504, 1509 (11th Cir. 1992) ("We think Congress outlined a fairly complete and pervasive federal scheme in the Magnuson Act, and believe Congress must have intended to occupy the field of fishery management within the EEZ.").

A state may not regulate *fishing* in the EEZ. It may only regulate fishing *vessels*. The definition of fishing in 16 U.S.C. § 1802(16), constitutes part of the definition of fishery in 16 U.S.C. § 1802(13). Only the U.S. can regulate a fishery in the EEZ, it also has the *exclusive* authority to regulate such fishing. When Florida acted to prohibit Mr. Daniels from using a gill net in the EEZ—equipment allowed

by federal regulations, 50 CFR § 622.9—it was improperly acting in a manner which regulated the fishery. Florida's pompano gear restriction rule, quoted above on p. 3 severely limits the allowable gear a fisherman may use in the EEZ.

If the EEZ pompano population was in need of conservation and management, it is emphatically the duty of the Gulf of Mexico FMC to promulgate an FMP. 16 U.S.C. § 1852(a). *See also*, *United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Servs.*, 837 F.3d 1055, 1063 (9th Cir. 2016). The decision of that Council to forgo the adoption of an FMP confirms that the Council determined pompano stocks are sufficiently vibrant to not require conservation or management.

The Act closely forbids any state from regulating a fishery, unless, as described above, Congress has given a state the specific and limited authority to do the same. 16 U.S.C. § 1856(a)(3)(B). Congress has made no such delegation with regard to the Gulf of Mexico pompano fishery, and the state is foreclosed from taking it upon itself to set federal policy.

## **ARGUMENT**

## I.    **APPELLANT HAS STANDING TO CHALLENGE THE POMPANO ENDORSEMENT RULES**

Appellant sought both injunctive and declaratory relief below. This distinction was not noted by either Appellee or Judge Martinez below, but it is paramount to the analysis because the "allegations necessary to establish standing depend on the type

of relief sought." *Mack v. USAA Casualty Ins. Co.*, 994 F. 3d 1353, 1356 (11th Cir. 2021). "[I]n making the necessary preliminary determination of *what claims the plaintiff has actually raised* (and therefore, what claims he must have standing to raise), [courts] are bound by the contents of the plaintiff's pleadings, even on summary judgment." *Bochese v. Town of Ponce Inlet*, 405 F. 3d 964, 976 (11th Cir. 2005) (emphasis in original).

"[B]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief" if his injury in fact is "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001) (emphasis in original). That is, if a plaintiff seeks prospective relief—as Daniels does under his claim seeking a declaration that the Florida regulations are preempted and unconstitutional—they must "allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Malowney v. Fed. Collection Deposit Grp.*, 193 F. 3d 1342, 1346 (11th Cir. 1999). An injury to be demonstrated under the declaratory standing leg must also be "real," "immediate," and "definite." *Id*. at 1347.

Each element of standing must be supported in the same manner as any other allegation plead, but at "the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice…" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561. Daniels, below, clearly plead facts sufficient to establish standing at

the motion to dismiss stage. *Daniels v. Sutton*, No. 4:21-cv-10009-JEM/Becerra, 2022 WL 686832 (S.D. Fla. 2022). As the ruling below centered on cross-motions for summary judgement, it is clear that Appellees accepted all facts plead by Appellant as true.

In determining that Daniels did not have standing, Judge Martinez stated that: Because plaintiff was actually arrested pursuant to a different regulation that the one challenged in this action, F.A.C. 68b-35.004, and he has not alleged any facts that may trigger a future arrest pursuant to the challenged, 68b-35.005, he cannot satisfy the injury in fact prong. This reading ignores the prayer for injunctive relief contained in Daniels' Amended Complaint. Daniels made a clear request that the court "grant preliminary and permanent injunctive relief requiring Defendant's to immediately stop enforcing the Florida Pompano Rules outside Florida's territorial boundaries…" Amended Complaint at 3, states that the "FWC presently enforces various Florida administrative rules that seek to control the commercial harvest of pompano from the Gulf of Mexico Exclusive Economic Zone." Daniels then notes that these rules—the rules controlling the commercial harvest of pompano in the EEZ—**include** *Florida Administrative Code* Rules 68B-35.002(10) and 68B-35.005. Amended Complaint at 3. The four corners of the complaint, and specifically the prayer for relief, seek injunctive relief against more than these two rules: His prayer for relief encompasses every rule in Chapter 68B-35, all of which are

violative of the United States Constitution when enforced in the EEZ. Amended Complaint at 15.

Further, the order below stated that "[t]he regulation Petitioner was arrested under pertains to the simultaneous possession of pompano and gill and entangling nets. Here none of Plaintiff's claims challenge simultaneous possession." App'x at 197.

Whether a future injury is likely to occur in part depends on whether the misconduct alleged is authorized by or part of a government policy. *See, e.g.*, *31 Foster Children v. Bush*, 329 F.3d 1255, 1266 (11th Cir. 2003). When alleged misconduct is "authorized or part of a policy, it is significantly more likely that the injury will occur again." *Id.* In assessing whether a future injury is likely to occur, courts consider whether the plaintiff is likely to have another encounter with a government officer due to the same conduct that caused the past injury. *See, e.g., Honig v. Doe*, 484 U.S. 305, 320, (1988). As noted in his Motion for Summary Judgement, Daniels reiterated the points that Magistrate Judge Beccera made in finding standing below. Namely that (1) the court found "that Daniels being arrested and required to cease fishing and return to port was proof of a concrete injury," (2) the court found "that because Daniels is a commercial fishermen, the continued existence of the (State) regulations provides standing for this declaratory action," and (3) the court found "redressability because, [Daniels] would face the same

treatment as non-Florida-registered vessels regarding legal options for harvesting pompano and returning to land." App'x at 171

The court below collapsed both the injunctive and declaratory claims and the three prongs required to be shown for each into a single blurred analysis. The court below found redressability lacking because there is "no legal remedy that would cure the harm." This is clearly not the case. A permanent injunction against the enforcement of the Florida Pompano Rules would allow Daniels to target pompano with a gill net anywhere in the EEZ just as any out-of-state fisherman can do.

The Florida regulatory scheme criminalizes conduct Congress and the Gulf FMC have approved of, i.e., fishing for pompano in the EEZ in the manner one desires, so long as one does not contravene 50 CFR § 622.9. There is no question that, were Daniels to use a gill net to target pompano in the EEZ, he would be again arrested.

## II. THE FLORIDA POMPANO REGULATIONS ARE PREEMPTED BY THE MAGNUSON ACT

### A. The Federal Magnuson-Stevens Fishery Conservation and Management Act

The Magnuson Act was passed in 1976 (Pub. L. No. 84-265, 90 Stat. 331), and has two primary goals: to encourage domestic commercial fishing and to ensure preservation of the nation's coastal resources. "Commercial and recreational fishing constitutes a major source of employment and contributes significantly to the

economy of the Nation," 16 U.S.C. § 1801(a)(3), and "provide[s] [both] significant cultural and economic benefits to the Nation." 16 U.S.C. § 1801(a)(13). Accordingly, the Magnuson Act declares that part of its purpose is to "promote domestic commercial and recreational fishing under sound conservation and management principles" and to "encourage the development by the United States fishing industry of fisheries which are currently underutilized…" 16 U.S.C. § 1801(b)(3) & (6).

It is the policy of Congress to "authorize no impediment to, or interference with, recognized legitimate uses of the high seas, *except as necessary* for the conservation and management of fishery resources…" 16 U.S.C. § 1801(c)(2) (emphasis added). It is also the stated policy of the Federal Government to "identify and remove unnecessary regulatory barriers restricting American fishermen and aquaculture producers. Executive Order No. 13921 (85 C.F.R. 28471).

Congress also made clear its intent that the Federal government would maintain exclusive control over fisheries in the EEZ. 16 U.S.C. § 1811(a) ("Except as provided in section 1812 of this title, the United States claims, and will exercise in the manner provided for in this chapter, sovereign rights and exclusive fishery management authority over all fish, and all Continental Shelf fishery resources, within the economic exclusion zone." To this end, Congress established eight fishery management councils which "shall" … "for each fishery under its authority *that requires* conservation and management, prepare and submit" a fishery management

plan. 16 U.S.C. § 1852(h)(1) (emphasis added). It is undisputed that the Gulf Council has authority over pompano in the EEZ, 16 U.S.C. § 1852(a)(1)(E), and it is undisputed that no FMP exists for the Florida pompano. Accordingly, it is clear that the Gulf Council determined that the Florida Pompano was not in need of conservation or management in the EEZ. *See United Cook Inlet Draft Ass'n v. Nat. Marine Fisheries Serv.*, 837 F. 3d 1055, 1063 (9th Cir. 2016), *cert. denied*, 583 U.S. 815 (2017)

### B.     Florida's Pompano Regulation Scheme

The state of Florida has enacted pompano fishing regulations in Chapter 68B-35 of the *Florida Administrative Code*. The stated purpose of the regulations is to "protect and conserve Florida's pompano … resources and assure the continuing health and abundance of [the] species." Fla. Admin. Code R. 68B-35.001(1). The chapter declares Florida pompano to be a "restricted species" pursuant to § 379.101(32), Fla. Stat., and sets forth a definition for the "pompano endorsement zone," *viz* the "federal Exclusive Economic Zone (EEZ) waters lying between 25°09' North Latitude (Cape Sable) and 26°00' North Latitude (Hurricane Pass in Collier County) in the Gulf of Mexico." Fla. Admin. Code R. 68B-35.002(10). *See also* App'x at 167.

The chapter sets forth commercial daily harvest limits for pompano through

three limitations. First, persons who do not hold a Pompano Endorsement[1] who harvest for commercial purposes using a beach or haul sein, a cast net, or hook and line gear, may harvest, land, and possess up to 250 pompano *within* or *without* state waters.[2] Fla. Admin. Code R. 68B-35.0035(2). Second, persons who harvest pompano through use of gill or entangling nets in federal EEZ waters as incidental bycatch can harvest, land, and possess up to 100 pompano.[3] *Id*. And third, those holding a Pompano Endorsement and fishing in the PEZ, may catch an unlimited number of pompano using gill nets so long as the pompano are landed in between the latitude lines which establish the northern and southern boundaries of the PEZ. *Id*.; Fla. Admin. Code R. 68B-35.005(c).

---

[1] Under Fla. Admin. Code R. 68B-35.005, any person or vessel wishing to harvest pompano with a gill or entangling net in the PEZ must obtain from the FWC, in addition to a Saltwater Products License and a Restricted Species Endorsement, a Pompano Endorsement. In addition to possessing a Saltwater Products License and a Restricted Species Endorsement, the applicant must also own a commercially registered vessel of at least 22 feet, subject to certain other conditions, and have not received specified violations in the prior three license years.

[2] This rule basically limits the commercial pompano fishery to a hook-and-line harvest.

[3] When pompano are caught by this method, the fisherman must possess a valid Saltwater Products License and Restricted Species Endorsement and must "return from federal EEZ waters directly, continuously, and expeditiously through state waters from the place where the lawful harvest occurred to the place where the vessel is regularly docked, moored, or otherwise stored or to the place of the licensed wholesale dealer where the catch is to be sold… Fla. Admin. Code R. 68B-35.004.

Because Fla. Admin. Code R. 38B-35.005(2)(c) generally prohibits the "[s]imultanious possession of any pompano with any gill or entangling net aboard any vessel," except between 25°09' North Latitude and 26°00' North Latitude, the thin strip of the Florida coast between these two points is the only place Florida allows the landing of pompano targeted by gill net.

Florida's rule 68B-35.005(2)(c), of the *Florida Administrative Code* is also invalid. It prohibits "Simultaneous Possession of Pompano and Gill or Entangling Nets" … "within or without state waters" … except in the small area adjacent to the PEZ, and only by a person who holds valid licenses. This means that even if this Court determines that Florida's ban on the gill netting of pompano in the EEZ constitutes an impermissible regulation of that fishery, the state will still enforce that ban within state waters. This rule must be stricken. It acts to criminalize the transport of legally caught pompano from the EEZ into state waters when there is also a gill net on that vessel. Under that rule, even if a vessel legally catches pompano in the EEZ with a gill net, the fish may not be brought into state waters for sale, except in the narrow confines of latitudes establishing Florida's PEZ. That clearly constitutes an effort by the state to restrict the catch of pompano in the EEZ.

Under Federal law, there is no limit to the catch of pompano or restriction on the tackle used to do so—other than that contained in 50 C.F.R. § 622.9—or where the fish may be landed. Florida's rules have the direct and proximate effect of greatly

limiting that catch. This cannot be allowed under the preemption doctrine. As the

Fourth Circuit held in *City of Charleston v. A Fisherman's Best, Inc.*, 310 F.3d. 155,

169 (4th Cir 2002):

> Implied preemption occurs where Congress, through the structure or objectives of federal law, has impliedly precluded state regulation in the area. State action may be in direct conflict with federal law, which is most quickly apparent when the federal and state enactments are directly contradictory on their faces. But state and federal laws need not be contradictory on their faces for federal laws to supercede. State action may be struck down even if it does not prohibit the very act that federal law requires. It may be struck down if it is in "actual conflict" with precise and sufficiently narrow objectives that underlie the federal enactments. Also, federal and state law conflict when it is impossible to comply with both state and federal law. Direct conflict may be implied. Conflict preemption may occur when Congress did not necessarily intend preemption of state regulation in a given area but the particular state law conflicts directly with federal law or stands as an obstacle to the accomplishment of federal objectives.

Under that holding, Florida gill net and possession rules must be disallowed,

as the rule restricts what the Act allows. By limiting where legally caught pompano

may be landed and sold, Florida is effectively regulating the fishery. That Court *also*

held that the city's attempt to restrict where legally caught fish could be landed was

*impermissible*, as it conflicted with the purpose of the Act. In that case, the city

prohibited long liners from landing their catch in the city's "Maritime Center." *Id*. at

16

159. This limitation the Court found to be erroneous and "incorrect as a matter of law." *Id*. at 170.

The Court in *City of Charleston*, citing to this Court's opinion in *Chiles*, 979 F.2d at 1504, held that "the legislative history of the Magnuson Act preempts the entire field of fishery management of the EEZ." *City of Charleston*, 310 F. 3d at 170. That preemption also restricts the state from controlling where such fish may be offloaded. It is apparent that a gill netter in the EEZ will not target pompano if he must motor hundreds of miles to a state approved location for sale. That, in the language in *City of Charleston*, quoted above, constitutes a clear "obstacle to the accomplishment of federal objectives." *Id*. at 169.

## C. Federal Preemption Generally

The Supremacy Clause of the Constitution, Art. VI, cl. 2, invalidates state laws that "interfere with, or are contrary to," federal law. *Nat'l Audubon Socy., Inc. v. Davis*, 307 F.3d 835, 851 (9th Cir. 2002), *opinion amended on denial of reh'g*, 312 F.3d 416 (9th Cir. 2002). "Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir.2010) (citations omitted).

"The ultimate touchstone of preemption analysis is the intent of Congress. *Malone v. White Motor Corp.*, 435 U.S. 497, 504 (1978). One of the most familiar recitals is that federal and state law conflict when "the state law stands as an obstacle to the accomplishments of the full purposes and objectives" of federal law. *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 248 (1984)." When Florida seeks to regulate fishing in the EEZ, a power Congress explicitly reserved unto itself, it clearly erects an obstacle to the purposes and intent of the Magnuson Act.

### D.     History of the Magneson Act

As this case turns on the meaning of the language in 16 U.S.C. § 1856, the Court must begin "where all such inquiries must begin: with the language of the statute itself." *Republic of Sudan v. Harrison*, 587 U.S. ___, 139 S. Ct. 1048, 1056 (2019). While Congress previously allowed states to retain regulatory authority over "fishing" in the original 1976 enactment of the Magnuson Act, it withdrew this authority and enacted the more constrained language relating to "fishing vessels" seen today. That is, under the original version of the Act, 16 USC §1856 (a) stated: "No state may directly or indirectly regulate *any fishing which is engaged* in by any fishing vessel outside its boundaries *unless* such vessel is registered under the laws of such state." (emphasis added). However, in 1984 Congress amended that language (Sustainable Fisheries Act of 1984, Pub. L. No. 98-623, §404; 98 Stat. 3394; 1984). That amendment *eliminated* a state's power to regulate *fishing* activities and only

allowed each state to regulate *fishing vessels*. That amendment was clearly intended to disallow a state to regulate fishing methods in the EEZ. Judge Martinez's decision is not consistent with that amendment of the Act. Under the original language, a state *could* regulate how its vessels *fished* in the EEZ. But the 1984 amendment removed the state's ability to ... "regulate *any fishing which is engaged in* outside its boundaries" and only allowed the state to regulate "*vessel(s)* registered under the laws of that state." 16 USC §1856(a)(3) (emphasis added).

When Congress removed state power to regulate *any fishing* in the EEZ, it clearly meant that limitation to have meaning. *Ross v. Blake*, 578 U.S. 1850, 1858 (2016) ("When Congress amends legislation, courts must presume it intends the change to have real and substantial effect.") (internal brackets and quotation marks omitted).

Further, if Congress chooses to allow a state to regulate a fishery, it knows how to do so. An example of that is found in the Sustainable Fisheries Act, Pub. Law 104–297, § 112(d); 110 Stat. 3559 (1996):

> Subject to the provisions of this section *and notwithstanding section 306(a) of the Magnuson–Stevens Fishery Conservation and Management Act* (16 U.S.C. § 1856(a)), each of the States of Washington, Oregon, and California may adopt and enforce State laws and regulations governing *fishing* and processing *in the exclusive economic zone* adjacent to that State in any Dungeness crab (Cancer magister) fishery *for which there is no fishery management plan in effect* under that Act.

(emphasis added).

The Act no longer allows a state to control how *anyone fishes* in the EEZ, regardless of vessel registry. This is also apparent in the other parts of the statute. This analysis begins with the acknowledged power of the United States to have exclusive authority over the *fishery* in the EEZ. Judge Martinez recognized the Act gives the United States "sovereign rights and *exclusive fishery* management authority over all fish… within the exclusive economic zone." App'x at 187. (emphasis added).

The definitions make this clear. Section 1802 of the Act defines the terms: *fishing vessel*, *fishery*, and *fishing*.  Those definitions are:

> **(13)** The term "fishery" means--
>
> > **(A)** one or more stocks of fish which can be treated as a unit for purposes of conservation and management and which are identified on the basis of geographical, scientific, technical, recreational, and economic characteristics; and
> >
> > **(B)** any fishing for such stocks.

It is important to note, the act of *fishing* is part of the definition of a "*fishery*."

> **(16)** The term "fishing" means--
>
> > **(A)** the catching, taking, or harvesting of fish;
> >
> > **(B)** the attempted catching, taking, or harvesting of fish;
> >
> > **(C)** any other activity which can reasonably be

expected to result in the catching, taking, or harvesting of fish; or

**(D)** any operations at sea in support of, or in preparation for, any activity described in subparagraphs (A) through (C).

Such term does not include any scientific research activity which is conducted by a scientific research vessel.

**(18)** The term "fishing vessel" means any vessel, boat, ship, or other craft which is used for, equipped to be used for, or of a type which is normally used for--

**(A)** fishing; or

**(B)** aiding or assisting one or more vessels at sea in the performance of any activity relating to fishing, including, but not limited to, preparation, supply, storage, refrigeration, transportation, or processing.

The crucial language includes *fishing* as part of a *fishery*. When Florida arrested Daniels for fishing with a gill net in the EEZ, it was regulating the pompano *fishery*, because *fishing* is part of the *fishery*. That it cannot do, as the power to regulate a fishery is in the *exclusive* hands of the United States. If useful fishing gear is prohibited, the fish are harder to catch. That limits the harvest. That constitutes the regulation of a fishery, not of a vessel. The supremacy clause forbids such efforts. No state may regulate a fishery in the EEZ, unless Congress specifically grants it such power or the FMC delegates the power explicitly. That is the crux of this appeal. Florida cannot so regulate any part of an EEZ *fishery*, as the act of *fishing* is a

component of the fishery. Florida's power to regulate a fishing vessel in the EEZ does *not* include the manner of *fishing* by that vessel.

While, where no FMP is in place, a *state* may regulate a fishing vessel, 16 U.S.C. § 1956(a)(3)(A). However, under Florida Law, the FWC has *no power* to regulate a "fishing vessel." That power is delegated to the Department of Highway Safety and Motor Vehicles under Chapters 327 and 328 of the *Florida Statutes*—which task the Florida Department of Highway Safety and Motor Vehicles (DHSMV), not the FWC, with vessel regulation. Conversely, the Florida Constitution tasks the FWC to regulate "marine life," Art. IV, § 16, Fla. Const., exactly the manner of regulation the federal government reserved for itself in the EEZ. The FWC may regulate "marine life," but under Florida Law, only the DHSMV, not the FWC, has the authority to regulate *fishing vessels*.

Finally, the legislative history of the Act and its various amendments shows that Congress explicitly declined adding language to the Act that would "provide for state management of federal fisheries without an FMP. *United Cook*, at 1063.

The decision below misreads the plain text of the Magnuson Act and allows Florida's administrative agencies to enact all manner of fishing regulations on the High Seas. However, all Florida's regulations at issue here are based on the faulty premise that it is not *controlling* fishing, but only a *fishing vessel*. There are, before this Court, two options: First, to allow the decision below to stand and to allow the

state to undertake complete control of the High Seas under the guise of regulating "fishing vessels"; or second, in a reasoned alternative, to restrict state authority to that which Congress intended under 16 U.S.C. § 1856.

Congress has made clear: the words "fishing vessel" are axiomatically distinct from the word "fishing," *U.S. v. Pate*, ___ F. 4th ____, No. 20-10545 (2023 WL 6618405) at *5 ("[W]hen Congress uses different language in similar sections, it intends different meanings"). Florida's attempt to blend this clear distinction is violative of the purpose and text of the Act.

### E.    Prior Interpretation by Federal Courts

Because of the substantial changes made to the Magnuson Act by the 1984 amendment, a line must be drawn separating the preemption case law for federal fisheries at that junction.[4] In reviewing Congress' intent with respect to the Magnuson Act, this Court has stated in the past that the legislative history of the Magnuson Act evinces a desire to preempt the entire field of fishery management in the EEZ. This court in *Chiles* said it best:

> We think Congress outlined a fairly complete and pervasive federal scheme in the Magnuson Act, and believe Congress must have intended to occupy the field of fishery management within the EEZ. Neither the appellant's nor the appellee's brief fully elucidates the

---

[4] For instance, Appellant takes no issue with the holdings in cases such as *Anderson Seafoods, Inc. v. Graham*, 529 F. Supp. 512 (N.D. Fla. 1982), and *People v. Weeren*, 607 P.2d 1279 (Cal. 1980), because those case correctly interpreted the original language of the Magnuson Act's state jurisdiction provisions.

argument, but our reading of the statute reveals evidence of this intent. In § 1811(a) Congress claims for the United States "sovereign rights and *exclusive* management authority over all fish [except highly migratory species] ... within the exclusive economic zone."

*Chiles*, 979 F. 2d at 1509.

The above-quoted language from *Chiles* sets out the best interpretation of the issue now directly before this Court. A line of cases also exists stating that, once an FMP has been promulgated, a state's attempt to regulate more stringently is preempted by the FMP. *See Se. Fisheries Ass'n, Inc. v. Martinez*, 772 Fed. Supp. 1263, 1267 (S.D. Fla. 1991) (Holding that more stringent Spanish Mackerel landing limits violated supremacy clause); *Bateman v. Garner*, 716 Fed. Supp. 595, 598 (S.D. Fla. 1989), *aff'd*, 922 F. 2d 847 (11th Cir. 1990) (Florida Statute prohibiting shrimping where Federal Regulation allowed was preempted); *Vietnamese Fishermen Ass'n,* 816 F.Supp. at 1475 (concluding an FMP permitted the use of gill nets in certain places within the EEZ, and invalidating a California proposition banning the use of gill nets in the EEZ); *State v. Lauriat*, 561 A. 2d 496 (Me. 1989). While there is no FMP in the instant case, the jurisprudential underpinnings of these cases are highly relevant and instructive.

The lack of an FMP promulgation functions as a statement by the Gulf FMC that a fishery resource is not in need of conservation and management, i.e., that unlimited catch is allowed currently without imperiling the species. As it is well

established that state law cannot be more stringent than federal limits, it follows logically that Florida's EEZ regulation (1) prohibits fishing for pompano in a manner allowed by the Federal government, and (2) places catch limits where the federal government has declined to do so. Both of these acts violate the principles set forth in *Bateman*, *Martinez*, and *Vietnamese Fisherman Ass'n*. Where there is no FMP, the federal government declares that the fishery is not in need of conservation and management. Thus, the maximum sustainable yield is unlimited. Florida's state rules interfere with the federal government's setting of the optimal yield in the EEZ, as the state rules limit that which is unlimited under the Act.

### F.    Federal Regulation Preemption

In addition to governing the extent of state regulation in the EEZ where no FMP exists, 16 U.S.C. § 1856(a)(3) also allows states to exercise regulatory authority over fishing vessels *only* where no "other applicable Federal fishing regulations for the fishery in which the vessel is operating" are in place. The state of Florida ignores the clear terms of this aspect of the Magnuson Act as well. Under 50 C.F.R. § 622.9, the Secretary of the Department of Commerce has made clear that there are only four methods of fishing that are prohibited in the Gulf of Mexico EEZ, *viz* (1) explosives; (2) toxic chemicals; (3) fish traps; and (4) bottom trawls that do not have a weak link in the tickler chain. The case of *Vietnamese Fishermen Ass'n of Am. v. Cali. Dep't of Fish and Game*, 816 F. Supp. 1468 (N.D. Cal. 1993) is

especially instructive in this regard. The conflict on gear usage between the state statute and the FMP were analogous to the facts at hand. In *Vietnamese Fishermen*, summary judgement was granted in favor of the association enjoining state regulations prohibiting the taking of rockfish in the EEZ through the use of gill or trammel nets. The FMP regulations prohibited the use of gill nets only in a specified area, but not in the area at issue. The court held that there was a conflict because, in the federal waters at issue, the state law prohibited gill nets while the federal law did not restrict their use.

## III. THE FLORIDA POMPANO REGULATIONS VIOLATE THE EQUAL PROTECTION CLAUSE OF THE UNITED STATES CONSTITUTION

The Florida Pompano Rules impermissibly discriminate against Florida citizens because only they are prohibited from the gill-net-harvest of pompano in the EEZ outside the boundaries of the PEZ. This discrimination against Florida's citizens and vessels occurs by virtue of the fact that the regulations, as written, allow out of state fishermen to obtain Pompano Endorsements. Thus, these out-of-state fishermen may use gill nets to target and catch unlimited amounts of Florida pompano in any adjacent EEZ waters, and then—provided they have obtained the Endorsement—enter the PEZ and continue fishing with gill nets for pompano. With their combined haul harvested both within and without the PEZ, the fishermen may port in the landing zone adjacent to the PEZ and sell their catch. Florida citizens however, are prohibited from targeting pompano with gill nets in the 98 percent of

Florida's adjacent EEZ waters that are open to the out-of-state fishermen who possess an Endorsement. This is precisely what Daniels was arrested for.

Where an Equal Protection Claim is brough on the theory that a statute or regulation discriminates on its face the rational basis test is applied. *219 S. Atlantic Blvd. Inc. v. City of Ft. Lauderdale, Fla.*, 239 F. Supp. 2d 1265, 1276 (S.D. Fla. 2002). Here, the Florida Pompano Regulations unconstitutionally discriminate against Florida fishermen *in toto*. Where the regulation being challenged does not target a protected class, courts apply a two-step test in determining whether a regulation can survive rational basis: First, the court must identify "a legitimate government purpose which the governing body could have been pursuing;" and second, the court must ascertain "whether a rational basis exists for the enacting government body to believe that the [regulation] would further the hypothesized purpose." *Restigouche, Inc. v. Jupiter,* 59 F.3d 1208, 1214 (11th Cir. 1995).

While highly deferential, the rational basis test is "not a toothless one." *Dean v. Egleston*, 597 F. 3d 1223, 1230 (11th Cir. 2010) ((citing *Schweiker v. Wilson,* 450 U.S. 221, 234 (1981)). "The State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." *Id*. (citing *City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432, 446-47 (1985). While the "Equal Protection Clause does not require government decision makers to articulate any reason for their actions," *Haves v. City of Miami*, 52 F.3d

918, 922 (11th Cir. 1995), the Court need not hypothesize here. The State has proffered two purposes of the regulations at issue here. First, Rule 68B-35.001(1) of the *Florida Administrative Code* itself provides that "[t]he purpose and intent of the chapter are to protect and conserve Florida's pompano … resources and assure the continuing health and abundance of [the] species." Second, the state claims the "need to precent pompano overfishing provides a rational basis for the State to create the PEZ so it can better distinguish the legal and illegal use of gill nets." P. Motion to Dismiss at 18.

Neither of these arguments, and in fact no argument, can establish a rational basis for the PEZ regulation because the predicate finding of a legitimate state interest cannot be made. "When undertaking rational basis review, a court asks whether the government has the power or authority *to regulate a particular area in question*, and whether the proposed regulation has a legitimate government purpose." *Lloyd v. School Bd. of Palm Beach Cty.*, 570 F. Supp. 3d 1165, 1183 (11th Cir. 2021) (internal quotation marks omitted) (emphasis added). As established in Section II above, the State of Florida has no legitimate interest in regulating fisheries in federal waters because Congress has prohibited the state from undertaking that regulatory action. *See GRACE, Inc. v. City of Miami*, ___ F. Supp. 3d ____, 2023 WL 4942064, at *6 (S.D. Fla. 2023) (The city "has no legitimate interest in enforcing an unconstitutional ordinance."); *Otto v. City of Boca Raton*, 981 F.3d 854, 870 (11th

Cir. 2020) ("It is clear that neither the government nor the public has any legitimate interest in enforcing an unconstitutional ordinance."). In support of their position that the PEZ establishment aids in the enforcement of rules against illegal gill net fishing, the State cites to *Solis v. Miles*, 524 F. Supp. 1069 (S.D. Tex. 1981)—again a case decided before the 1984 state jurisdictional changes within the Magnuson Act—for the proposition that "[b]y regulating the importation and sale of redfish and speckled sea trout, the state seeks to prevent circumvention of its law. This is a legitimate state interest." *Id*. at 1078. The PEZ, however, resides entirely in Federal Waters, Fla. Admin. Code R. 68B-002(10), and is not analogous to a regulation of landing, importation, or sale. Additionally, and conclusively, the argument is a *non sequitur*: the State claims the PEZ helps enforce regulations against illegal gill net fishing, but the gill net fishing can only be illegal in the EEZ because of the establishment of the PEZ.

Here, there is no conceivable reason that Florida vessels should not be able to gill net fish in any areas of the EEZ and land the catch in ports of their choice. That is to say, the restriction of Florida pompano gill net fishermen to the PEZ violates the Equal Protection Rights of Florida's residents. The case of *Bateman v. Gardner*, 716 F. Supp. 595 (S.D. Fla. 1989), *aff'd*, 992 F. 2d 847 (11th Cir. 1990), *cert. denied*, 500 U.S. 932 (1991), is closely analogous to the issue at hand. There, an FMP had been enacted with regard to the shrimp fishery, the state of Florida enacted a statute

prohibiting all state registered shrimping vessels from shrimping in an area of the Gulf of Mexico EEZ while vessels registered in other states where permitted to shrimp in this area. The court held that the "net affect of the Florida prohibition was discrimination against its own citizens and violated the Equal Protection Clause." Because there is no "rational relationship between the statutory classification and a legitimate state goal," *Id.*, the regulation here must be struck down.

## CONCLUSION

For the above reasons this court must:

a.    reverse the decision below and prohibit Florida's enforcement of its gill net ban in the EEZ;

b.    invalidate Florida's rules which prohibit the simultaneous possession of pompano and a gill net when the gill net was used in the EEZ;

c.    invalidate Florida's rule which only allows landing of legally caught pompano in one specified area; and

d.    award Daniels attorney fees and costs and any other relief this Court deems just and appropriate.

Date: December 6, 2023.

KENNETH G. OERTEL

*/s/ Kenneth G. Oertel*

*Attorney for Appellant,*
*Timothy Randolph Daniels*

**Certificate of Compliance**

This document complies with the Type-Volume Limit of Fed. R. App. P. 32(a)(7)(B)(i), because this document contains 8,661 words. This document complies with the typeface requirement of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word version 2310 in size 14 Times New Roman font.